COOPERATIVA REFACCIONARIA DE COLONOS DE LA CENTRAL LOS CAÑOS Y SANTOS TIRADO RUIZ, Petitioners, *v.* THE REGISTRAR OF PROPERTY OF ARECIBO, Respondent.

No. 1307. Submitted February 1, 1954.—Decided February 26, 1954.

*Félix Ochoteco, Jr.,* for petitioners. The Registrar did not appear.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

The Cooperativa Refaccionaria de Colonos de la Central Los Caños presented in the Registry of Property of Arecibo, for recordation, a crop-loan contract made with the spouses Santos Tirado Ruiz and Manzana Cruz. The said document was returned by the Registrar, without taking action on it, for the following reasons:

1. The internal-revenue stamps in the amount of $3.25, for tariff fees, were not affixed to the document; and

2. The contract was not executed by public deed but under a private instrument.

In support of the two aforesaid reasons, the Registrar alleges in his note that the contract in question involves an amount exceeding $2,500, and therefore must meet both legal requirements, execution under a public deed and the payment of the corresponding fees. See §§ 6 and 11 of the Act to provide Contracts of Advances for Agricultural Purposes and Grinding of Cane (Act No. 37 of March 10, 1910, Sess. Laws, p. 119), as amended by Act No. 139 of May 13, 1943 (Sess. Laws, p. 428), and Act No. 167 of May 14, 1943 (Sess Laws, p. 594).[1]

---

[1] Sections 6 and 11 of the Act provide as follows:

"Section 6.—Contracts of advances for agricultural purposes, as well as contracts for the planting and the grinding of cane, may be executed under a public instrument and entered in the registry established by Section 7 of this Act.

"The aforesaid contracts of advances for agricultural purposes, and for the planting and the grinding of cane, shall contain a description of the property therein referred to, the kind of title of the property holder, and the terms and conditions stipulated by the parties; *Provided*, That when in the contracts of advances for agricultural purposes, the amount does not exceed two thousand five hundred (2,500) dollars and an agency created by an Act of the Congress of the United States of America, or a nonprofit cooperative association, organized under the laws of Puerto Rico to give credit facilities to farmers, is a party thereto or directly or indirectly intervenes therein, said contracts of advances may be executed under a public instrument, or under a private document subscribed before a notary public, in accordance with 'An Act to establish a Registry of Affidavits', approved March 12, 1912; *Provided, further*, That it shall not be necessary that a duly authorized official of the agency created by Acts of the Congress of the United States of America, sign his name, or ack-

The question therefore narrows down to a determination of the amount involved in the contract presented by the appellant to the Registry of Arecibo, in order to determine whether the requirements have been met.

Appellant maintains that we are dealing with a document which involves three "different and independent" crop-loan contracts. Its contention is based on the fact that, according to the clauses of the contract, the Cooperativa grants to the farmer concerned a $1,000 contract during each of the crops of 1954, 1955 and 1956, each loan expiring on June 30 of each of the three crop years. It is alleged further that each of the crops in question is encumbered separately up to the sum of $1,000.

From the foregoing appellant concludes that its object is the registration of three different contracts, each involving the amount of $1,000, and that since that amount is less than $2,500 the Registrar erred in his decision.

The Registrar's conclusion to the effect that we are dealing with a single contract involving an amount of $3,000 was

nowledge the execution of the private document before a notary public or any other oficial.

"Section 11.—The contracts to which this Act refers shall pay for the principal of the loan, without including the amount of credits for interest, deferred interest or costs and attorney's fees, the following fees on being entered in the register of agricultural contracts:

"(a) For the presentation, note of registration, and note at the foot of the title when the loan exceeds one thousand (1,000) dollars... $0.25

"(b) For each extensive annotation or marginal note made for the registration, assignment, amplification, or modification of crop-loan contracts or of loans guaranteed by factories with sugar to be received, the fees fixed in the following scale shall be collected:

"For each loan which shall not exceed:
"$100.............................................. $0.25
"More than $100 up to $200.......................... 0.50
"More than $200 up to $500......................... 1.00
"More than $500 up to $1,000 ....................... 2.00

"When the amount of the contract exceeds $1,000, $2.00 shall be collected for the first $1,000, and $0.25 additional for each $1,000 or fraction of $1,000.

"For each concise annotation or marginal note which must be made, $0.25 shall be paid when the amount of the loan does not exceed $1,000; and $0.50, when it exceeds $1,000; *Provided,* That when the crop-loan

correct, and the contract is therefore subject to the payment of fees and to the requirement that it be executed under a public instrument.

The third clause of the contract provides in part as follows:

"THIRD: In order to carry out the agricultural activities and to incur other expenses which are necessary in the cultivation of sugar-cane on THE PROPERTIES, THE DEBTOR has made a crop-loan agreement with LA COOPERATIVA, to which reference is made hereinafter as 'THE LOAN', for a sum which shall be hereafter stated, subject to the provisions of the Act enacted by the Legislative Assembly of Puerto Rico on the tenth day of March, nineteen hundred and ten, as subsequently amended, subject to the following conditions:

"(a) By virtue of the present contract, THE COOPERATIVA grants to THE DEBTOR a cash loan up to the sum of one thousand dollars ($1,000.00) during each of the crops for nineteen hundred and fifty-four, nineteen hundred and fifty-five, and nineteen hundred and fifty-six, for the purposes mentioned in the second and third clauses hereof, and THE DEBTOR binds itself to invest the said amount in accordance with the best methods used in Puerto Rico in the cultivation, development, preparation

---

contract is entered in more than two books because the farms are located in different municipalities, fees will be collected for one extensive annotation and the others concise.

"(c) For the registration of contracts of planting and grinding of cane, $1 shall be collected for concise annotations or marginal notes, and for extensive annotations or marginal notes, $2 shall be collected if the cane plantation the object of the contract does not exceed 50 cuerdas; $3 if said plantation of cane does not exceed 100 cuerdas, and 10 cents for each cuerda or fraction of a cuerda which exceeds the first 100 cuerdas of said plantation of cane.

"(d) When the parties voluntarily cancel the annotations before their expiration, they shall pay one-half of the fees prescribed in the preceding paragraphs. The fees mentioned in this Act shall be paid in internal-revenue stamps which the registrar shall affix to and cancel on the document, at the foot of the statement of its annotation; *Provided*, That when in the crop-loan contracts the amount of which does not exceed two thousand five hundred (2,500) dollars, corporations, associations or agencies created by virtue of acts of the Congress of the United States of America, or cooperative associations for nonpecuniary purposes organized in accordance with the laws of Puerto Rico are a part or intervene directly or indirectly to give credit facilities to farmers, the registration and cancellation of said contracts shall be made by registrars free of all charges."

and administration of the sugar-cane plantations on THE PROP-ERTIES, and the cutting and hauling of the sugar-cane therein planted to the factory of the Cooperativa Azucarera Los Caños, where it will be ground and processed."

The document sought to be recorded does not involve three different loan contracts but a single crop-loan contract. In order to perfect a loan contract it is necessary that the money be first delivered. 3 Valverde, *Tratado de Derecho Civil Español*, page 404, Third Ed. In the instant case only one crop-loan contract was perfected, in which bilateral obligations were established to be fulfilled at some future time by successive acts or performances. The obligation of the crop-loan creditor must be fulfilled by successive deliveries of $1,000 each year, and that of the farmer or crop-loan debtor by the return of the sums received, in successive performances, during three years. Successive-performance obligations are "those which provide for a series of acts to be repeatedly performed during a certain period." 2 Castán *Derecho Civil Español*, page 495. As stated in 1 De Buen, *Derecho Civil Común*, page 467 "single-performance obligations are distinguished from successive-performance obligations according to whether the lending is made in one single act or in a series of acts." The fact that the obligations created under the document in question must be performed by successive and independent acts, does not overcome the juridical reality that we are dealing with a single contract, since a single contract may create successive-performance obligations. The manner of performance does not affect the intrinsic nature of the contract. The fact that the performance is to be made by independent acts does not by itself imply the existence of independent contracts.

Appellant contends that if the parties had elected to execute three independent loan contracts of $1,000 each for three crops, each one of those contracts would have been recordable without complying with the aforesaid requirements, and that, therefore, the refusal to record on the ground that there had

been grouped together three contracts, according to appellant, in one single document, is tantamount to imposing a requirement merely of form. However, there may be significant consequences as respects the validity and effectiveness of the obligations created, when either form is adopted. If three contracts are executed in three different documents, each one of those contracts might be subject to an independent and separate juridical analysis for the purpose of ascertaining their validity or efficacy. The parties in this case chose to execute one single contract in one single document, and that was the form elected by them, in the exercise of their free will, and they are therefore subject to the consequences of their selection.

The Registrar's decision is affirmed.

Mr. Justice Sifre concurs in the result.